UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Demone Royelio Smith,　　　　　　　　　Case No. 12-cv-00163 (PJS/JSM)

　　　　　　Plaintiff,

v.

Jason Buck,

　　　　　　Defendant.

---

# DEFENDANT'S TRIAL BRIEF

---

**a. Defendant's Trial Counsel:**

　　Nathan C. Midolo, #0392373
　　IVERSON REUVERS CONDON
　　9321 Ensign Avenue South
　　Bloomington, MN  55438
　　Telephone: (952) 548-7200
　　Fax: (952) 548-7210
　　nathan@irc-law.com

**b. The case is scheduled for a Jury Trial**

**c. Defendant anticipates trial will last approximately 3 days.**

**d. Jurisdiction:**

　　Federal jurisdiction is proper based on Plaintiff's sole claim of excessive force under the Fourth Amendment in violation of 42 U.S.C. §1983.

**e. Facts:**

Plaintiff Demone Smith was indicted for conspiracy to distribute and distribution of crack cocaine on December 16, 2008, and a felony arrest warrant was issued for him. On December 19, 2008, Brooklyn Park police executed a traffic stop of Plaintiff's vehicle at the request of the Drug Enforcement Administration (DEA). Plaintiff was known to the Officers to be a convicted felon and was believed to be armed and dangerous. Officers used a loud speaker to order Plaintiff to turn off his truck and advised he was under arrest. Officers ordered Plaintiff to place his hands out the window, open the door from the outside, exit the truck, put his hands in the air, and turn around. Plaintiff initially complied with these commands. Officers then ordered Plaintiff to walk backwards toward the squad car, but Plaintiff ignored Officers' commands and got back in his truck.

Officers repeated the series of commands. Plaintiff got out of his truck but then returned to the vehicle rather than comply with commands to back up toward the Officers. Officers again ordered Plaintiff to exit the vehicle. At this point, the Officers anticipated Plaintiff was going to flee. Plaintiff exited the vehicle a third time. He again failed to follow Officers' commands and got back in his truck. Based on this high risk stop, Sergeant Steve Palmquist requested backup from a canine Officer.

Defendant Brooklyn Park Officer Jason Buck arrived on scene with his certified canine partner Diesel to assist. For nearly a minute and a half, Officers repeated commands for Plaintiff to exit the vehicle, put his hands in the air, and walk back toward Officers. Officer Buck warned Plaintiff twice, "walk back or you're going to get bit." Plaintiff again did not follow commands and failed to walk back toward Officers. Officer Buck then deployed Diesel and directed Diesel to apprehend Plaintiff.

Diesel grabbed Plaintiff by the back of his jacket and began pulling Plaintiff toward the Officers with Officer Buck assisting by pulling the lead attached to Diesel. Plaintiff's jacket then came out of Diesel's mouth and Officers ordered Plaintiff to get on the ground since he was not under control by any Officer and had not been searched. Immediately after Diesel lost his grip, Plaintiff turned toward the Officers, again ignoring Officer commands. Plaintiff then got on his knees but did not lie down. At the same time, Officer Buck redirected Diesel after Diesel lost his grip in order to continue providing assistance in bringing Plaintiff into custody. After Diesel was redirected he apprehended Smith on his upper left thigh near his hip and his left coat sleeve. Officers were then able to place Plaintiff in handcuffs and perform a search for weapons.

Officers transported Plaintiff to the Brooklyn Park Police Department. A skin abrasion on Smith's upper left thigh was determined not to require medical attention but was photographed before Plaintiff was released to the DEA. After Plaintiff was transferred to the custody of the DEA he was processed through the Sherburne County Jail where he met with a jail intake nurse. Plaintiff eventually pled guilty to the narcotics distribution charges and has been in custody since December 19, 2008.

   f. **Claims or Defenses:**

The Fourth Amendment ensures a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend. IV. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Muehler v. Mena*, 544 U.S. 93, 99 (2005) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 396-97).

Whether the Officers' actions were "objectively reasonable" depends on the facts and circumstances confronting them, without regard for the underlying

intent or motivation. *Id*. The reasonableness of a particular use of force depends on the circumstances of each case, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Rohrbough*, 586 F.3d at 586 (quoting *Graham*, 490 U.S. at 394). Courts must use "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must make allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a given situation." *Cook v. City of Bella Villa*, 582 F.3d 840, 851 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 396-97). The use of some force by police is reasonable when an arrestee flees, resists arrest, or disobeys orders. *See e.g., Cook,* 582 F.3d at 850-51; *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). "The use of dogs can make it more likely that the officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders and the suspect." *Robinette v. Barnes*, 854 F.2d 909, 914 (8th Cir. 1988). Under this precedent, Plaintiff will have to establish Officer Buck's measured use of Diesel was unreasonable in light of the unfolding situation. Officer Buck avers his deployment and redirection of Diesel was reasonable under the totality of the

circumstances given Plaintiff's failure to follow commands, the belief that Plaintiff was armed and dangerous, and the fact Plaintiff was not in custody.

Further, because Plaintiff's alleged injuries occurred in 2008, in order to recover Plaintiff is required to provide evidence Officer Buck's alleged excessive force caused more than a *de minimis* injury. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). In addition, the Eighth Circuit has specifically held, when examining a plaintiff's injury claim, a plaintiff's self-diagnosis cannot support an injury claim when unsupported by the medical evidence. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also McClennon v. Kipke,* 821 F.Supp.2d 1101, 1007 (D. Minn. 2011) (stating plaintiff's "bare assertions of shoulder pain and chest tightness, without more, are insufficient to constitute something beyond *de minimis* injuries.").

At trial, the question will be whether Officer Buck's action of redirecting Diesel to apprehend Plaintiff before Plaintiff was in custody was unreasonable based on the totality of the circumstances. If the jury determines Officer Buck's redirection of Diesel was unreasonable, they will need to determine whether Plaintiff suffered more than a *de minimis* injury.

g. **Unresolved Issues:**[1]

In his Proposed Verdict Form Plaintiff suggests the Eighth Circuit's opinion reversing summary judgment holds, as a matter of law, Officer Buck used excessive force. Plaintiff claims because squad video exists, under *State v. Harris* there are no 'genuine' issue of material facts in dispute and the Eighth Circuit's holding precludes the jury from deciding otherwise. 550 U.S. 372, 380 (2007). Plaintiff raises this issue for the first time as trial approaches and has not previously brought a Motion for Summary Judgment. Regardless, Plaintiff's position on this issue distorts the nature of the Eighth Circuit's holding.

In *Smith v. Buck*, the Eighth Circuit clearly stated "viewing the summary judgment evidence in the light most favorable to Smith . . . that evidence showed . . ." 564 Fed.Appx. 258, 258 (8th Cir. 2014). The Court held "under *these* facts, a reasonable officer would not think that redeploying the police dog was reasonable . . ." *Id*. Contrary to Plaintiff's stance, the Court never said it was making its determination off of the video—in fact, the Court does not even mention a video exists. Similarly, many of the 'facts' referenced by the Court in support of its holding are disputed by Officer Buck. When describing the 'facts' in a light most favorable to Plaintiff, the Court states:

---

[1] Defendant does not address the issues raised in his Motions in Limine.

7

> Buck directed the dog to grab Smith's coat and pull him back toward the officers. Once this was accomplished, the dog released Smith, and Officer Steve Palmquist ordered Smith to get on the ground . . . at this moment, Buck redeployed the dog, which bit the upper portion of Smith's left leg, leaving two puncture wounds.

*Id*. However, Officer Buck never ordered Diesel to grab Plaintiff's coat—he released Diesel in an attempt to assist in apprehending Plaintiff using a "bite and hold" technique. Similarly, Diesel never accomplished his goal of apprehending Plaintiff and he never released Plaintiff—rather as Diesel was attempting to assist in bringing Plaintiff into custody he lost his grip of Plaintiff's jacket. Plaintiff then immediately turned toward Officers, again failing to follow their commands. Similarly, Diesel was never able to bring Plaintiff all the way back to Officers, and lost his grip after only making it approximately half-way; Officers then moved forward and approached Plaintiff. At the same time, after Diesel lost his grip Officer Buck immediately redirected Diesel to continue assisting in placing Plaintiff in custody. Officer Buck's deployment of Diesel was one continuous engagement and did not cease until Plaintiff, who was believed to be armed and dangerous and just demonstrated his continued refusal to follow Officers' commands, was placed in custody.

As a result, Officer Buck's version of what occurred is significantly different than the 'facts' discussed by the Eighth Circuit in a light most favorable to Plaintiff. Plaintiff's stance is simply an attempt to add language to the Court's

holding which the Eighth Circuit never addressed or discussed. Moreover, whether Officer Buck's redirection of Diesel was objectively reasonable under the circumstances must be viewed from the perspective of a reasonable officer on the ground engrossed in the uncertain, rapidly evolving situation. As courts have noted, videos "do not answer the question of whether the officers' actions were "objectively reasonable" from the perspective of those on the ground. Rather, the video provides only the perspective [from where it was recorded]." *Aipperspach v. McInerney*, 963 F.Supp.2d 901, 908 (W.D. Mo. 2013). The court further states:

> Moreover, the Court's viewing of the video over three years later is precisely the kind of hindsight judgment the Eighth Circuit and the United States Supreme Court have cautioned against . . that technology now allows the Court to travel back in time to determine whether decisions were reasonable in hindsight does little to affect the reasonableness of decisions in the moment.

*Id*. (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865) ("the court must judge the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

Given the consequences of Plaintiff's stance, Defendant requests this issue be addressed as early as possible before the start of trial.

IVERSON REUVERS CONDON

Dated: April 9, 2015  By <u>s/Nathan C. Midolo</u>
     Nathan C. Midolo, #0392373
*Attorney for Defendant*
9321 Ensign Avenue South
Bloomington, MN  55438
Telephone: (952) 548-7200
nathan@irc-law.com