UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DEMONE ROYELIO SMITH,                              Case No. 12-CV-0163 (PJS/JSM)

              Plaintiff,

v.                                                                  FINAL INSTRUCTIONS

JASON BUCK,

              Defendant.

---

**Instruction No. 1.**

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect.  I will now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as the instructions I give you now.  You must not single out some instructions and ignore others, because all are important.  This is true even though some of the instructions I gave at the beginning of trial and during trial are not repeated here.

The instructions I am about to give are in writing and will be available to you in the jury room.  This does not mean, however, that these instructions are any more important than my earlier instructions.  Again, you must follow all of my instructions, whenever given and whether in writing or not.

Neither in these instructions nor in any ruling, action, or remark that I have made during this trial have I intended to give any opinion or suggestion about what your verdict should be.

During the trial, I have asked questions of some witnesses.  Do not assume that because I asked questions I have any opinion whatsoever about the case, or about the subject I asked about, or about the witness whom I questioned.  I decide all questions of law that arise during the trial, but you jurors decide all questions of fact.

## Instruction No. 2.

In trials like this, you are required to make your decision on the basis of whether the plaintiff is more likely right than wrong.  The burden is on the plaintiff, Demone Smith, to prove that every essential element of his claim is more likely true than not true.  If the proof should fail to establish that any essential element of plaintiff's claim is more likely true than not true, you should find for defendant.

Proving something is more likely true than not true does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

You have probably heard the phrase "proof beyond a reasonable doubt."  That is a stricter standard than "more likely true than not true."  It applies in criminal cases, but not in this civil case; so put it out of your mind.

In determining whether any fact in issue has been proved more likely true than not true, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  If, on any issue in the case, you cannot decide whether a fact is more likely true than not true, you cannot find that it has been proven.

## Instruction No. 3.

I have mentioned the word "evidence."  "Evidence" includes the testimony of witnesses; documents and other things received as exhibits; and any facts that have been stipulated—that is, formally agreed to by the parties.

Certain things are not evidence.  I shall list those things again for you now:

(1)  Statements, arguments, questions, and comments by a lawyer are not evidence.

(2)  Objections are not evidence.  Lawyers have a right and sometimes an obligation to object when they believe something is improper.  You should not be influenced by the objection; you should not, for example, be prejudiced in any way against a lawyer who makes an objection or the party whom he or she represents.  If I sustained an objection to a question, you must ignore the question and must not try to guess what the answer might have been.

(3)  Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

(4)  Exhibits that are identified by a party but are not received in evidence are not evidence.

(5)  Anything you saw or heard about this case outside the courtroom is not evidence.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence."  You are instructed that you should not be concerned with those terms.  The law makes no distinction between direct and circumstantial evidence.  You should give all evidence the weight and value you believe it is entitled to receive.

### Instruction No. 4.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony, and the extent to which their testimony is consistent with other evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent mistake or lapse of memory, or instead an intentional falsehood, and that may depend on whether the contradiction relates to an important fact or only a small detail.

### Instruction No. 5.

The testimony of law-enforcement officers should be considered by you just as any other evidence in this case, and in evaluating their credibility you should use the same guidelines that you apply to the testimony of any witness.  You should not give either greater or lesser credence to the testimony of a witness merely because he or she is a law-enforcement officer.

### Instruction No. 6.

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

### Instruction No. 7.

You have heard that Mr. Smith was convicted of a crime.  You may consider this evidence only to help you decide the weight and credibility to give his testimony.  This evidence may not be considered for any other purpose.

## Instruction No. 8.

This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All persons stand equal before the law and are to be treated as equals.

## Instruction No. 9.

You were permitted to take notes during the course of the trial.  If you took any notes, those notes should be used only as memory aids.  You should not give your notes precedence over your independent recollection of the evidence.

If you did not take notes, you should rely on your own independent recollection of the evidence and should not be influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the recollection or impression of each juror as to what the testimony may have been.

## Instruction No. 10.

The Fourth Amendment of the United States Constitution guarantees the right to be free from unreasonable seizures.  The right to be free from unreasonable seizures includes the right to be free from excessive force during any arrest, including an arrest that is otherwise lawful.

Because there was a warrant for Mr. Smith's arrest, Officer Buck had the right to use force to arrest Mr. Smith, so long as he used no more than the amount of force reasonably necessary under the circumstances.

Mr. Smith contends that when Officer Buck used the dog a second time, Officer Buck used excessive force.  In order to prevail on his excessive-force claim, Mr. Smith must prove three elements:

1.  Officer Buck used force against Mr. Smith;

2.  This use of force was excessive because it was not reasonably necessary to arrest Mr. Smith; and

3.  Mr. Smith was injured as a direct result of the excessive use of force.

 In determining whether the force was excessive, you must consider all of the circumstances, such as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether a reasonable officer on the scene, without the benefit of hindsight, would have used such force under similar circumstances.  You must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain, and rapidly evolving.

You must consider whether Officer Buck's actions were reasonable in light of the facts and circumstances confronting him without regard to Officer Buck's own state of mind, intention, or motivation.  The question is not whether Officer Buck himself believed that he was using excessive force.  Instead, the question is whether, given all of the circumstances known to Officer Buck at the time, a reasonable officer in his position—without the benefit of hindsight—would have used such force.

-4-

If any of the three elements above has not been proven more likely true than not true, then your verdict must be for Officer Buck and against Mr. Smith.

## Instruction No. 11.

You have heard that Officer Buck received information about Mr. Smith during a briefing on the morning of Mr. Smith's arrest. You may consider this information only to help you decide whether the amount of force Officer Buck used against Mr. Smith was reasonably necessary under the circumstances. You should not assume that the information provided to Officer Buck was true or draw any conclusions about Mr. Smith's character based on this information.

## Instruction No. 12.

Questions 2 and 3 on the verdict form relate to Mr. Smith's injuries and damages. You must answer Question 2 (and, depending on your answer to Question 2, perhaps Question 3) regardless of your answer to Question 1—that is, you must determine what injuries Mr. Smith suffered and perhaps calculate Mr. Smith's damages even if you find that Officer Buck did not use excessive force.

You may wonder why you are being asked to make findings about injuries and damages even if, based on your other findings, Officer Buck is not liable to Mr. Smith. This type of request is commonly made of juries in a wide variety of cases. In particular, it is common in personal-injury cases—such as lawsuits arising out of automobile accidents—to ask the jury to determine how much in damages the plaintiff has suffered, even if the jury determines that the defendant was not at fault and therefore does not have to pay those damages.

We ask juries to do this for the convenience of the parties and the courts. In any lawsuit, it is possible that a jury's finding that a plaintiff is not entitled to damages might be reversed on appeal. If that happened, and if the jury was not asked to determine the amount of damages, then the case would have to be tried all over again. But if the jury was asked to determine the amount of damages, then the appellate court might be able to order that the plaintiff be paid that amount of damages, saving the parties and the trial court the need to retry the case.

The fact that the verdict form asks you to calculate Mr. Smith's damages is in no way meant to suggest how you should answer any of the questions on the verdict form. In particular, in deciding whether Officer Buck used excessive force against Mr. Smith, you must consider only the evidence relevant to that question and the applicable law as described in my instructions. Nothing in the verdict form is meant to imply that you should answer that question or any other question one way or the other.

Likewise, the fact that the verdict form asks you about certain kinds of injuries and damages is not intended to imply that Mr. Smith did or did not suffer a particular type of injury or damage. Again, in answering any question on the verdict form, you must consider only the evidence relevant to that question and the applicable law as described in my instructions.

## Instruction No. 13.

In calculating the amount of Mr. Smith's damages, you must decide what amount of money would fairly compensate him for any injuries you find he sustained or is reasonably certain to sustain in the future as a direct result of Officer Buck's second use of the police dog.  You should consider the following elements of damages:

1. The physical pain and mental suffering Mr. Smith has experienced or is reasonably certain to experience in the future;

2. The nature and extent of the injury; and

3. Whether the injury is temporary or permanent and whether any resulting disability is partial or total.

Remember, throughout your deliberations you must not engage in any speculation, guess, or conjecture, and you must not award any damages under this instruction by way of punishment or through sympathy.

If you find that Mr. Smith's damages have no monetary value, then you must return a verdict for Mr. Smith in the nominal amount of $1.00.

## Instruction No. 14.

Mr. Smith seeks what are called "punitive damages" for Officer Buck's alleged violation of his right to be free from excessive force.  Punitive damages may be awarded to punish a defendant for misconduct and to deter the defendant and others from engaging in similar misconduct in the future.  Punitive damages are not for the purpose of compensating a plaintiff.

To recover punitive damages, Mr. Smith must prove that, when Officer Buck used excessive force against him, Officer Buck did so either maliciously or with reckless indifference to Mr. Smith's right to be free from excessive force.

To find that Officer Buck acted "maliciously" toward Mr. Smith for purposes of this instruction, you must find that he acted with ill will, or out of spite, for the purpose of injuring Mr. Smith.

To find that Officer Buck acted with "reckless indifference" for purposes of this instruction, you must find that he was aware of a substantial risk that his actions would violate Mr. Smith's right to be free from excessive force but took those actions anyway, despite this risk.

If you find that Officer Buck violated Mr. Smith's rights either maliciously or with reckless indifference, you may, but are not required to, award punitive damages.

In deciding whether to award punitive damages, you should consider whether Officer Buck's conduct was reprehensible.  You should award punitive damages to Mr. Smith only if you find that Officer Buck's conduct toward Mr. Smith was sufficiently reprehensible to warrant an award of punitive damages to achieve punishment or deterrence.

In determining how reprehensible Officer Buck's conduct was, you may consider whether the harm suffered by Mr. Smith was physical or economic or both; whether the

officer acted with violence, intentional malice, or reckless disregard for human health or safety; whether the conduct of the officer that harmed Mr. Smith also harmed, or risked harming, others; whether the wrongful conduct was repeated; and whether the officer committed similar wrongful conduct in the past.

If you decide to award punitive damages against Officer Buck, you should consider the following in deciding the amount of those damages:

1.     How much harm the officer's conduct caused Mr. Smith; and

2.     What amount of punitive damages is needed, given the amount of actual damages awarded, to punish the officer for his wrongful conduct and to deter him and others from similar wrongful conduct in the future.

Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. The amount of any punitive-damages award should bear a reasonable relationship to the harm Mr. Smith suffered. You may not award punitive damages to punish Officer Buck for harm to anyone other than Mr. Smith.

### Instruction No. 15.

That concludes my instructions on the parties' claims and defenses. I will now give you some final instructions about conducting your deliberations and returning your verdict.

*First*, when you go to the jury room, you must select one of your members to serve as your foreperson. That person will preside over your discussions and speak for you here in court.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous. In other words, all of you must agree.

Each of you must make your own conscientious decision, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors. Further, you must only discuss the case when all jurors are present in the jury room. So if someone leaves the room for whatever reason, you must stop discussing the case until that person returns.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans for any party in this case. You are judges—judges of the facts. Your only job is to seek the truth from the evidence in the case.

*Third*, you must decide this case based solely on the evidence presented in court and the instructions that I give you. You must not do any research or make any investigation on your own about anyone or anything involved in this case, including the parties, lawyers, and witnesses; the matters in dispute; and the applicable law. For example, you must not consult dictionaries or other reference materials; search the Internet, websites, or blogs; or use any other electronic tools to obtain information about

this case or to help you decide this case.  Again, you must decide this case based solely on the evidence that was presented in court and the instructions that I give you.

*Fourth,* during your deliberations, you must not communicate with anyone about this case, except, of course, your fellow jurors.  I know that many of you use cell phones, smart phones, tablets, computers, and other tools of technology.  You must not use these devices to communicate electronically with anyone about this case, including your family and friends.  That means that you must not call or text or email anyone about this case, and you must not use any blog or website to communicate about this case, including Facebook, Twitter, Google+, MySpace, LinkedIn, or YouTube.  You must not use any other type of technology or social media to communicate about this case, even if I have not specifically mentioned it.  Please let me know immediately if you become aware that any juror has violated these instructions.

*Fifth,* if you need to communicate with me during your deliberations, you may send a note to me through the court-security officer who will be stationed outside of the door to the jury room.  The note should be signed by one or more jurors.  I will respond as soon as possible either in writing or orally in open court.  Remember that you should not tell anyone—including me—how your votes stand numerically.

You should know that if you do send me a note, it could take me anywhere from five minutes to an hour or two to respond.  I will try to respond as soon as possible, but I may not be able to respond immediately because, for instance, I may be in a hearing or a meeting, or I may need to do legal research or consult with the attorneys before answering your question.  I ask you to be patient and to understand that sometimes I may not be able to respond immediately to a note from you.

If you do not reach a verdict by the end of the day, I will send you a note shortly before 5:00 p.m. dismissing you and telling you when to return.  If you would like to stay past 5:00 p.m. or return before 9:00 a.m. on any particular day, please let me know as soon as possible, so that we can make staffing arrangements.

*Sixth*, I emphasize again that your verdict must be based solely on the evidence and on the law that I have given to you in my instructions.  And, again, your verdict must be unanimous—all of you must agree.  Nothing I have said or done is intended to suggest what your verdict should be.  That is entirely for you to decide.

*Finally,* the verdict form is simply the written notice of the decisions that you reach in this case.  You will take the verdict form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the court-security officer that you are ready to return to the courtroom.